

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Magistrate Docket No. |
| --- | --- | --- |
| Plaintiff, | ) | **19MJ2125** |
| v. | ) | COMPLAINT FOR VIOLATION OF: |
| | ) | Title 31, US Code 5332 Bulk Cash Smuggling |
| Julio Cesar MORENO-Ortiz, Wendy Karen GUEVARA-Hidalgo, | ) | |
| Defendants. | ) | |

The undersigned complainant being, duly sworn, states:

On or about May 20, 2019, within the Southern District of California, defendants Julio Cesar MORENO-Ortiz and Wendy Karen GUEVARA-Hidalgo, did knowingly and intentionally fail to declare approximately $102,998 in United States currency with the intent to evade a currency reporting requirement, as required by 31 U.S.C. Section 5316, while concealing it prior to entering the United States; in violation of Title 31, United States Code 5332.

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Phillip J. Top
Border Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE,
THIS 21st DAY OF May, 2019.

LINDA LOPEZ
United States Magistrate Judge

# CONTINUATION OF COMPLAINT:
Julio Cesar MORENO-Ortiz,
Wendy Karen GUEVARA-Hidalgo,

## PROBABLE CAUSE STATEMENT

On May 20, 2019, Border Patrol Agent S. Contreras, and canine partner were conducting assigned duties in the Campo Border Patrol Station's area of responsibility. On this date the Interstate 8 immigration checkpoint, located in Pine Valley, California, was not operational. At approximately 12:05 PM, while observing traffic, Agent Contreras noticed a vehicle driven by defendant, later identified as Julio Cesar MORENO-Ortiz. As MORENO approached, Agent Contreras saw MORENO slow down drastically and abruptly move into the other lane as if trying to conceal himself from view by blending in with the motoring public. MORENO did not use a signal light for the lane change. Furthermore, Agent Contreras observed that the vehicle was bouncing as if it was heavily laden and the rear tires were visibly angled. Agent Contreras noticed that MORENO's front and passenger side windows were heavily tinted and was not able to see how many passengers occupied the vehicle.

Agent Contreras began to follow MORENO and observed the driver perform another lane change. Agent Contreras did not see any other vehicles ahead or behind MORENO to call for the sudden lane change behavior. MORENO then conducted another lane change. While following, Agent Contreras noticed that MORENO slowed down his speed and then quickly changed lanes once they were directly behind it. Agent Contreras continued to follow behind the vehicle and observed another change in the vehicle's speed in that it increased in speed. In addition, Agent Golden performed record checks on the vehicle's license plate. These checks revealed that the vehicle was driven into the United States from Mexico, via the San Ysidro Port of Entry, on today's date at 12:07 AM. Agent Contreras continued to follow the vehicle westbound on Interstate 8.

Agent Contreras caught up to MORENO and positioned his agency vehicle directly next to MORENO. At that time Agent Contreras saw the driver sporadically apply the vehicle's brakes. MORENO continued to make frequent lane changes and change his speed from approximately 70 to 50 MPH. Agent Contreras also noticed that MORENO was constantly looking at the side and rear view mirrors to see who was following him. As a result of constantly looking at the side and rear view mirrors, MORENO was driving over the emergency rumble strip located adjacent to the freeway lanes. Moments later, Agent Contreras observed the driver increase his speed to create distance. Agent Contreras had to speed up to approximately 80 mph to catch up. Based on the above information, Agent Contreras conducted a vehicle stop on Interstate 8 near the Sunrise Highway on-ramp.

**CONTINUATION OF COMPLAINT:**
Julio Cesar MORENO-Ortiz,
Wendy Karen GUEVARA-Hidalgo,

Agent Contreras approached the vehicle, identified himself as a Border Patrol agent, and conducted an immigration inspection with MORENO. MORENO and the front passenger, later identified as defendant Wendy Karen GUEVARA-Hildalgo, stated they were citizens of Mexico. Agent Contreras asked MORENO and GUEVARA for their visas. GUEVARA fumbled vigorously with her wallet as her hands shook uncontrollably. Agent Contreras asked GUEVARA if she was okay, and GUEVARA responded, "Yes" and explained that the reason she was shaking was because she was cold. Agent Contreras asked the driver and passenger where they were traveling from, and both stated Yuma, Arizona. Agent Contreras then asked each of them when was the last time they crossed into the United States from Mexico. Simultaneously, both gave a different answer. MORENO stated yesterday, and GUEVARA stated a couple days ago. Agent Contreras asked what they were doing in Yuma. GUEVARA stated that they both owned a cell phone repair store in Tijuana, Mexico, and they traveled to Yuma to buy merchandise for the store. Agent Contreras attempted to look in the back seat and cargo area of the vehicle to see if they had merchandise. Upon my motion to look in the vehicle, GUEVARA stated that they went to Yuma but didn't purchase anything. Agent Contreras asked MORENO who the vehicle belonged and their intended destination. MORENO stated it was his vehicle and that they were heading to Tijuana, Mexico.

Agent Contreras requested permission from MORENO and GUEVARA to conduct a canine sniff on the vehicle. MORENO gave consent and Agent Contreras opened the passenger door and allowed the canine to follow the odor into the vehicle. The canine alerted to the gear shifter area. Agent Contreras returned the canine to his service truck and informed MORENO and GUEVARA of the canine's alert. Agent Contreras asked if they were each responsible for the contents of the entire vehicle. MORENO stated, "Yes, it's their vehicle." Agent Contreras returned to the vehicle and began searching it. Agent Contreras noticed that one of the screws used to secure the plastic cover of the center console was not a factory screw, but a drywall screw. Agent Contreras pulled back the plastic cover in order to see behind the center console and immediately observed multiple bundles of United States currency.

At approximately 12:45 PM, Agent Contreras informed MORENO and GUEVARA of the canine alert and told them that the vehicle was going to be moved approximately a mile east of the Sunrise Highway to the non-operational Border Patrol checkpoint for a continued inspection of the Element. At the checkpoint, Border Patrol Agent R. Dominguez and Agent Contreras removed the plastic cover of the center console, removed the speaker, and each agent observed numerous bundles of US currency. Agent Dominguez removed the gear shift console of the Element and discovered more bundles of US currency. At approximately 12:50 PM, Agent

**CONTINUATION OF COMPLAINT:**
Julio Cesar MORENO-Ortiz,
Wendy Karen GUEVARA-Hidalgo,

Contreras placed MORENO and GUEVARA under arrest.

Agent Contreras asked GUEVARA to remove every item from her pockets. GUEVARA removed a bundle of cash and a handful rubber bands from her trouser pockets. The bundle of cash that GUEVARA removed from her trouser was identical to the bundles discovered in the vehicles' center console. In addition, the rubber bands were exactly the same color and sized as the ones were used to wrap the bundles that were discovered inside the center console. A total of 53 bundles were removed from the vehicle's center console and gear shift console. Border Patrol Agents A. Hernandez and B. Bulkley took the 53 bundles to Wells Fargo Bank in Alpine, California. The sum of the 53 bundles totaled $102,998.00 USD. The bundle GUEVARA removed from her trouser pocket totaled $1,000.00 USD. GUEVARA also had inside her purse a total of $379 USD and $5,760 Mexican pesos. A search of GUEVARA's purse revealed three small pieces of paper with 10,000 written on them and more rubber bands. These small pieces of paper and rubber bands were identical to some of the small pieces of paper and rubber bands that were used on the bundles of currency.

MORENO was advised of his Miranda rights. MORENO stated that he understood his rights and was willing to answer questions without an attorney present. MORENO stated his wife told him it was over one hundred thousand dollars. MORENO stated he was the one who hid the money where it was found and was instructed to take the money to Tijuana, Mexico. MORENO stated that the point of contact was his wife. MORENO stated they were going to get paid $2,000 USD for transporting the money to Tijuana. MORENO stated they did not have a specific place for the delivery of the money and that they would be contacted once they cross into Tijuana for a meeting. MORENO stated that his wife is the person that collects the money and that he just drives. MORENO stated they have transported money three times. MORENO stated that in a previous occasion they transported approximately $20,000 USD and in another occasion it was approximately $30,000 MORENO stated they would always get paid the same amount of money, $2,000 USD.

GUEVARA was advised of her Miranda rights. GUEVARA stated that she understood her rights and was willing to answer questions without an attorney present. When asked about the money in the center console of the car, GUEVARA stated that she did not know how it got into her vehicle. GUEVARA stated that one time she asked about crossing money into the United States and learned that it was illegal to cross more than $10,000 USD without declaring it.